UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| MICHAELA JEFFERY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Civil No. 3:19-cv-00023-GFVT |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| MEDICAL PROTECTIVE COMPANY, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Medical Protective Company moves this Court for judgment on the pleadings pursuant to Rule 12(c). [R. 9.] For the following reasons, Defendant's motion is GRANTED.

**I**

On removal from Fayette Circuit Court, Plaintiff Michaela Jeffery brings this suit against Medical Protective Company (Med Pro) to secure payment of a judgment against Med Pro's insured. Med Pro is an insurance company which, until April 19, 2014, insured dentist Justin Clemens against malpractice suits through a claims-made policy. [R. 1 at ¶ 6.] Between October 2013 and February 2014, Plaintiff Michaela Jeffery was a patient of dentist Justin Clemens. [R. 1-2 at ¶.] Dr. Clemens began installing dental implants for Ms. Jeffery. Before the work could be finished, however, Ms. Jeffery was informed that "Dr. Clemens had left and the office was being closed." *Id.* Ms. Jeffery suffered injuries to her mouth and was forced to see a second dentist to complete and repair the work done by Dr. Clemens.

On April 15, 2014, Ms. Jeffery's counsel sent Med Pro a letter. [R. 1-2 at 10.] The header indicated the matter involved Justin Clemens, and it said only this: "To Whom it May

Concern: Please be advised that our firm and I represent Michaela Jeffrey. Please contact me so that we may discuss this. I look forward to working with you on this matter." *Id.* On May 12, a claims adjuster from Med Pro responded to Ms. Jeffery's counsel via letter. *Id.* at 11. That letter confirmed receipt of Ms. Jeffery's April 15 letter, acknowledged that Med Pro was the professional liability carrier for Dr. Clemens, and advised counsel for Ms. Jeffery, "[i]f it is your client's intention to pursue a claim against our insured," to submit "all the records, reports, and x-rays for subsequent treatment, as well as the itemized bills and expenses related to your client's alleged injuries." *Id.* On July 8, 2014, counsel for Ms. Jeffery replied to Med Pro via letter, explaining that Ms. Jeffery intended to make a claim and providing basic details thereof. On August 5, 2014, counsel for the plaintiff sent another letter "providing additional information including the cost of correcting the negligent acts of Dr. Clemens and identification of those negligent acts." *Id.* at 14.

On August 28, 2014, Med Pro sent Ms. Jeffery's counsel another letter which indicated it did not intend to cover her claim. The letter stated that neither Dr. Clemens nor Ms. Jeffery had ever put Med Pro on notice of her claim in the manner required by the policy. Nevertheless, on October 30, 2014, Ms. Jeffery filed a lawsuit against Dr. Clemens in Fayette Circuit Court. [R. 1-2 at 4.] Neither Med Pro nor Dr. Clemens defended against her claims, and the Judge independently awarded Ms. Jeffery $283,095.00 in damages. *Id.* at 8.

On March 16, 2019, Ms. Jeffery filed suit against Med Pro in Fayette Circuit Court to recover her damages from Med Pro. [R. 1-2 at 2.] Ms. Jeffery insists she gave Med Pro proper notice of her claim within the claims period, and if she didn't, it was as a result of Med Pro's bad faith failure to disclose the policy requirements. She alleges violations of the Kentucky Unfair Claims Settlement Practice Act (KUCSPA), promissory estoppel, and equitable estoppel. *Id.*

Now, Med Pro moves for judgment on the pleadings pursuant to Rule 12(c). Med Pro contends that Ms. Jeffery's injuries are not covered by its policy with Dr. Clemens because it was a claims-made policy, and Med Pro did not receive notice of her claim until the policy had already lapsed. Relatedly, Med Pro argues that Ms. Jeffery cannot pursue her KUCSPA bad faith claim because the issue of coverage has not been adjudicated. Finally, Med Pro argues the Court should dismiss Ms. Jeffery's claims of promissory and equitable estoppel because they are insufficiently pled.

II

A motion for judgment on the pleadings pursuant to Rule 12(c) is reviewed under the same standards as a motion to dismiss under Rule 12(b)(6), and the Court is required to take as true all well-pleaded allegations of the non-moving party. *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017). To survive under Rule 12(c), "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Id*. at 346–47 (citations omitted). However, "[i]f, on a motion under . . . Rule 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Still, there is an exception: courts may consider "public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion [for judgment on the pleadings], as long as they are referred to in the [c]omplaint and are central to the claims contained therein" without converting a motion for judgment on the pleadings to a motion for summary judgment. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

Here, defendant Med Pro styled its motion as one for judgment on the pleadings pursuant to Rule 12(c), but it also attached several exhibits to its motion in order to "provide the Court

3

with a complete summary of the events surrounding this matter[.]" [R. 9.] Ms. Jeffery argues that Rule 12(d) requires Med Pro's motion be converted into a motion for summary judgment. The Court disagrees. Of the several exhibits attached to Med Pro's motion, only four were not also attached to Ms. Jeffery's complaint. The first is the insurance policy at issue. [R. 9-2.] Inclusion of the policy does not convert Med Pro's 12(c) motion into a motion for summary judgment because Ms. Jeffery's complaint repeatedly references the insurance policy, which is "central to the claims contained therein." *Bassett*, 528 F.3d at 430. The other three are letters sent from Med Pro to its insured, dentist Justin Clemens. [R. 9-5; R. 9-6; R. 9-9.] These the Court excludes from its consideration and does not rely on them in the following analysis. Accordingly, the motion is not converted and the sufficiency of Ms. Jeffery's complaint will be assessed under a Rule 12(c) standard.

### A

Ms. Jeffery raises three claims in her complaint: violation of the KUCSPA, promissory estoppel, and equitable estoppel. [R. 1-2.] None can bear scrutiny.

### 1

Kentucky enacted its Unfair Claim Settlement Practices Act so that "an insurance company is required to deal in good faith with a claimant, whether an insured or a third-party, with respect to a claim which the insurance company is *contractually obligated* to pay." *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000) (emphasis in original). Thus, "an insurance company's violation of the UCSPA creates a private cause of action both for the named insured and for those who have claims against the named insured," such as Ms. Jeffery. *See Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997). "The KUCSPA comprehensively defines misleading insurance investigative practices and prohibits insurers from

engaging in certain activities in the course of settling claims." *Hollaway v. Direct Gen. Ins. Co. of Miss.*, 497 S.W.3d 733, 737 (Ky. 2016). Ms. Jeffery accuses Med Pro acting in bad faith by "failing to promptly provide a reasonable explanation for denying coverage . . . and for not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability had become reasonably clear," in violation of Kentucky Revised Statute § 304.12-230. [R. 1-2 at ¶ 23; *see* K.R.S. § 304.12-230(6), (14).]

To prevail on a cause of action for bad faith under the KUCSPA, a plaintiff must prove three things: "(1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (citing *Federal Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844, 846–47 (Ky. 1986)(Leibson, J., dissenting)). Direct actions against insurers are prohibited in Kentucky, meaning that "a complainant must first establish liability before seeking indemnity from an insurer in an action based on the insured's negligence." *Pryor v. Colony Ins.*, 414 S.W.3d 424, 432 (Ky. Ct. App. 2013). In practice, plaintiffs often accomplish this by filing suit against the insured and insurer simultaneously, and then moving or agreeing to bifurcate and stay discovery of the KUCSPA bad faith claims until any underlying negligence or contractual claims are resolved. This is because oftentimes, the disposition of the underlying tort or contract claim obviates the need to try the issue of bad faith.

The procedural posture here is a little unusual. Ms. Jeffery has already obtained a judgment against Dr. Clemens in state court, so liability is established. But while liability has been adjudicated, coverage under the terms of the policy has not. Coverage hinges on issues of

notice.  Dr. Clemens's insurance policy with Med Pro required notice, in writing, of claims and potential claims[1].  Because it was a claims-made policy, Ms. Jeffery was required to notice Med Pro of her claims prior to expiration of the policy.  Med Pro argues that Ms. Jeffery failed to properly notify it of her claim within the claims period.  Ms. Jeffery contends her counsel's April 15, 2014 letter was sufficient notice and, if that letter was deficient under the policy, Med Pro acted in bad faith by purposely waiting to inform her of that fact until after the policy had expired.

Either way, Ms. Jeffery cannot proceed on her KUCSPA claim against Med Pro at this time.  "[A] third-party claimant may only sue the insurance company under the UCSPA when coverage is not contested or already established."  *Pryor*, 414 S.W.3d at 432.  Liability has been established, but coverage remains in dispute.  And until the coverage question is decided, Ms. Jeffery is unable to establish the first *Wittmer* element.  Ms. Jeffery's claim for bad faith is premature, and is therefore dismissed without prejudice.[2]

**2**

Ms. Jeffery next asserts promissory estoppel.  [R. 1-2 at ¶¶27–31.]  The complaint states that, by way of its May 12 letter, "Med Pro acknowledged it was the carrier for Dr. Clemens, requested a copy of all the medical records related to the claim, and acted as an insurer representing its insured in a medical malpractice claim."  [R. 1-2 at ¶ 28.]  Ms. Jeffery argues that this is an implied promise to cover the claim and says she "relied on Med Pro's

---

[1] The policy defined a claim as "an express written demand for money as compensation for civil damages," and a potential claim as "an incident which the Insured reasonably believes will result in a claim for damages."  Notice of potential claims required a report "includ[ing] all reasonably obtainable information, including the time, place and circumstances of the incident; the nature and extent of the patient's injuries; and the names and addresses of the patient and any available witnesses."  [R. 9-2 at 18–19.]

[2] The Court dismisses Ms. Jeffery's bad faith claim without prejudice because it appears, should the issue of coverage be resolved, she could bring her bad faith claim at a later date.  *See Watson v. United States Liab. Ins. Co.*, 2019 Ky. App. LEXIS 94 (May 24, 2019).

6

representation when choosing to bring the action against Dr. Clemens." *Id.* at ¶ 31. Ms. Jeffery was injured by "being forced to pay for all her follow-up treatment needed to cure Dr. Clemens' negligence out of her own pocket." *Id.*

"Under Kentucky law, the elements of promissory estoppel are: (1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise." *Harris v. Burger King*, 993 F. Supp. 2d 677, 691 (W.D. Ky. 2014) (internal citations omitted); *see also Saywer v. Mills*, 295 S.W.3d 79, 89 (Ky. 2009). The doctrine cannot be invoked if plaintiff's reliance on the promise is unreasonable. *See Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 642 (Ky. Ct. App. 2003).

Ms. Jeffery's claim of promissory estoppel, as pled, fails to survive Med Pro's motion for judgment on the pleadings. The alleged "promise" is not a promise at all; the May 12 letter simply acknowledges that it was the insurance carrier for Dr. Clemens. It made no promises about coverage or the viability of the policy, and it made no promise of payment. Further, reliance on the May 12 letter as "implicitly promis[ing] that Defendant will defend and cover plaintiff's claim against its insured" is unreasonable. [R. 12 at 9.] At that time, Dr. Clemens' liability had not even been established. Finally, to find that Med Pro's May 12 letter obligated it to pay Ms. Jeffery's claim under a theory of promissory estoppel would lead to absurd results. It would hamper prompt investigation of claims if, every time an insurer acknowledged there was a policy in effect and requested more information, a plaintiff could later claim promissory estoppel when their claims were ultimately denied.

7

Ms. Jeffery's third and final claim is equitable estoppel. [R. 1-2 at ¶¶32–38.] She alleges "Med Pro concealed material facts by not informing Michaela that Michaela's communication did not fit within Med Pro's own definition of being put 'on notice of a claim.'" *Id.* at ¶ 32. She alleges that Med Pro knew that her counsel's April 15 letter failed to conform to the notice requirements of Dr. Clemens's policy, but deliberately withheld that information until after the policy had lapsed so that she could not cure the defect. Therefore, Ms. Jeffery argues Med Pro should be estopped from asserting lack of notice as a defense to her indemnity claim. [R. 12 at 11.]

Equitable estoppel "may be invoked by an innocent party who has been fraudulently induced to change their position in reliance on an otherwise unenforceable oral agreement." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 643 (Ky. Ct. App. 2003). Its essential elements are: "(1) conduct which amounts to a false representation or concealment of material facts, or conduct calculated to convey the impression that the facts are otherwise than those which the party subsequently attempts to assert; (2) the intention or expectation that such conduct will influence the other party; and (3) actual or constructive knowledge of the real facts." *Adler v. Elk Glenn, LLC*, 2013 U.S. Dist. LEXIS 176527 *31–32 (E.D. Ky. December 17, 2013) (citing *Weiand v. Bd. of Trustees of Ky. Retirement Sys.*, 25 S.W.3d 8, 91 (Ky. 2000)).

Whether or not Ms. Jeffery can prove these elements, "estoppel always acts a shield, never as a sword." 28 Am. Jur. 2d *Operation and Effect* § 30. Equitable estoppel is not a claim, but "a means of precluding the assertion of a claim or a defense[.]" *Id.* Thus, while Ms. Jeffery could argue—under a theory of equitable estoppel—that Med Pro should be prevented from litigating lack of notice of her claim, that argument need not be asserted as a claim, and is not a

basis for relief as used here. Accordingly, Ms. Jeffery's claim of equitable estoppel must be dismissed.

### III

While the question of liability is clear, the question of coverage is not. Unfortunately for Ms. Jeffery, a claim for bad faith under the KUCSPA is not the way to clear things up. Her claims for promissory and equitable estoppel also fail. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Medical Protective Company's Motion for Judgment on the Pleadings **[R. 9]** is **GRANTED**;

2. Count 1 of Plaintiff Michaela Jeffery's Complaint is **DISMISSED WITHOUT PREJUDICE**;

3. Counts 2 and 3 of the Complaint are **DISMISSED**;

4. All Counts of the Complaint dismissed, this matter is **STRICKEN** from the Court's active docket; and

5. Judgment shall enter contemporaneously.

This the 13th day of March, 2020.

Gregory F. Van Tatenhove
United States District Judge