UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| MICHAELA JEFFERY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:19-cv-00023-GFVT-EBA |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MEDICAL PROTECTIVE COMPANY, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |
| | ) | |

This matter is before the Court on Plaintiff Michaela Jeffery and Defendant Medical

Protective Company's cross-Motions for Summary Judgment. [R. 46; R. 47.] Ms. Jeffery holds

default judgment against Dr. Justin Clemens, who was once insured by MedPro. She now seeks

summary judgment declaring that MedPro is required to indemnify Dr. Clemens. [R. 46-1 at 1.]

In opposition, MedPro argues that it is not required to indemnify Dr. Clemens because it did not

receive proper notice of Ms. Jeffery's claim before Dr. Clemens's insurance coverage expired.

[R. 49 at 3.] Upon review, the Court will **GRANT** summary judgment in favor of MedPro.

**I**

From October 2013 to February 2014, Plaintiff Michaela Jeffery received dental care

from Dr. Justin Clemens, then a medical professional insured by Defendant MedPro. [R. 1-2 at

3.] During this time, Dr. Clemens negligently installed Ms. Jeffery's dental implants and then

"abandoned [her] when she needed additional dental work" to correct the implants and repair the

extraction sites. [R. 46-1 at 2.] In response to Dr. Clemens's negligence, Ms. Jeffrey filed a

complaint against him with the Kentucky Board of Dentistry on February 26, 2014, which

resulted in suspension of his dental license. *Id.* Around this same time, Ms. Jeffery retained

attorney Al Welsh to file suit against Dr. Clemens. [R. 46-1 at 2.] On April 15, 2014, Mr. Welsh "called MedPro regarding [Ms. Jeffery's] claim against Dr. Clemens and followed up the conversation with a letter of representation." *Id.* Twelve days after Mr. Welsh's phone call, MedPro terminated Dr. Clemens's insurance policy because he failed to pay his premiums. [R. 49 at 2.] Though Mr. Welsh continued to communicate with MedPro through October, the insurance company ultimately concluded that "it would not be defending [Ms. Jeffery's] claim due to a lack of notice of a claim prior to the expiration of the insurance policy." [*See* R. 46-1 at 3; R. 46-12.]

In October 2016, Ms. Jeffery obtained default judgment for $283,095 against Dr. Clemens in Fayette Circuit Court, Case No. 14-CI-4076. [R. 46-1 at 4.] And, in March 2019, Ms. Jeffery filed suit against MedPro to attain a declaration that the company is required to indemnify her default judgment. [R. 49 at 9; R. 1.] In support of her request, Ms. Jeffery argued that Mr. Welsh's April 15 communications with MedPro constituted sufficient pre-termination notice of her claim against Dr. Clemens. [*See* R. 1.] In response, MedPro filed a Motion for Judgment on the Pleadings, in which it argued that Ms. Jeffery had not placed it on pre-termination notice of either a "claim" or "potential claim," as governed by the terms Dr. Clemens's insurance contract, as to require coverage. [R. 23.] In January 2021, the Court ruled that Ms. Jeffery had not placed MedPro on notice of a "claim" but that attorney Welsh's communications with MedPro had plausibly placed the company on pre-termination notice of a "potential claim." [R. 34 at 7.] The parties then engaged in discovery and have now filed cross-Motions for Summary Judgment in which they dispute whether attorney Welsh's communications sufficiently placed MedPro on notice of a potential claim as to require coverage. [R. 46; R. 47.] This matter is now ripe for review.

2

**II**

Summary judgment is appropriate when the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the Pres. of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). In doing so, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001). Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013).

3

### A

As an initial matter, because a declaratory judgment is requested, the Court must determine whether granting a declaration is appropriate.  Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added).  Accordingly, jurisdiction under the act is discretionary. *See Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942) (exercise of jurisdiction under the Declaratory Judgment Act is not mandatory); *see also Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004).

Moreover, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). In determining whether to exercise its jurisdiction under the Act, a district court in the Sixth Circuit considers the following five factors:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000) (citations omitted).

In this matter, only factor five weighs against exercising jurisdiction because the Commonwealth's own declaration of rights statute, KRS § 418.040, is a more effective alternative remedy.  *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 561 (6th Cir. 2008) ("state

courts are best situated to identify and enforce the public policies that form the foundation"
underlying insurance contracts). But, in favor of proceeding, no additional claims are pending
that have not been bifurcated from this matter, and declaratory judgment would serve a useful
purpose in clarifying the legal relations at issue, would not improperly encroach on state
jurisdiction, and does not appear to have been sought for an improper purpose. Because a
balance of the factors weighs in favor of analysis, the Court will proceed in its analysis.

**B**

Having determined the Declaratory Judgment Act satisfied, the Court turns to the Parties'
argument in favor of summary judgment. Ms. Jeffery's complaint survived MedPro's Motion
for Judgment on the Pleadings because she had sufficiently pled that her counsel's
communications with MedPro put the company on notice of a potential claim against Dr.
Clemens as to require indemnification. [R. 34.] Accordingly, the primary question remaining at
this stage, after discovery has taken place, is whether counsel's communications with MedPro
were sufficient to have put the company on notice of a "potential claim." Dr. Clemens's contract
with MedPro states as follows:

> In consideration of the payment of the premium and subject to the limits of liability
> and the other terms of this policy, the Company hereby agrees to defend and pay
> damages, in the name and on behalf of the Insured or his or her estate,
>
> A.    In any claim first made, or potential claim first brought to the Insured's
>       attention, during the term of this policy based upon professional services
>       rendered, or which should have been rendered, after the retroactive date by
>       the Insured, or any other person for whose acts or omissions the Insured is
>       legally responsible, in the practice of the Insured's profession as hereinafter
>       limited and defined.
>
> However, the Company shall have no duty to defend or pay damages: [...]
>
>     2.    on a potential claim unless it was reported to the Company during the term
>           of this policy and the report includes all reasonably obtainable information,
>           including the time, place and circumstances of the incident; the nature and

extent of the patient's injuries; and the names and addresses of the patient
and any available witnesses.

[R. 1-1 at 18.]

In support of summary judgment, Ms. Jeffery contends that her attorney sufficiently notified MedPro of her potential claim against Dr. Clemens through his communications with the company on April 15. [*See* R. 46-1 at 5-9.] In support, Ms. Jeffrey indicates that, though her attorney's communications with MedPro were short and limited in scope, her attorney "did not have access to any medical records, had not consulted an expert, and could not give any specific regarding the damages […]" at that time. *Id.* at 6. Further, because she had filed a Board complaint against him, Ms. Jeffrey argues that Dr. Clemens did "reasonably believe" that his negligent medical treatment was likely to result in a claim for damages. *Id.* at 6-7.

In opposition, MedPro first argues that its "policy provides that only its Insured can give notice of a 'potential claim,'" and so, because Dr. Clemens did not personally notify the company that Ms. Jeffrey was likely to sue, it is not required to indemnify the default judgment against him. [*See* R. 49 at 19-21.] Because it argues that only the Insured can provide notice of a potential claim, MedPro contends that the Court is contractually barred from considering whether attorney Welsh's communications put the company on notice of a potential claim against Dr. Clemens. *See id* at 17 (citing *Meyers v. Kentucky Med. Ins. Co.*, 982 S.W.2d 203, 209-10 (Ky. App. 1997)) ("Courts cannot make a new contract for the parties under the guise of interpretation or construction but must determine the rights of the parties according to the terms agreed upon them.") (internal citations omitted). Though Dr. Clemens's contract does not explicitly state that a third-party's communications are insufficient to put MedPro on notice of a potential claim, MedPro asks the Court to read the policy "as a whole" and to determine that only Dr. Clemens could have reported a potential claim. [*See* R. 49 at 18.]

MedPro specifically refers the Court to provisions of Dr. Clemens's contract referred to as Endorsement 828 and Condition 1.[1]  *Id.* at 19-20.  Under Endorsement 828, the phrase "potential claim" is defined as "an incident which the Insured reasonably believes will result in a claim for damages."  *Id.* at 19.  [R. 47-3 at 4.]  Similarly, Condition 1 indicates that "[t]he Insured shall notify the Company [...] or its agent, as soon as possible, of any threatened claim [...]."  *Id.* at 6.  Because these provisions indicate that (1) it is the Insured's attainment of subjective knowledge that a claim against him may be forthcoming that triggers his duty to notify and (2) that the Insured has a duty to notify MedPro of the potential claim to ensure coverage, MedPro argues that the Insured himself must provide notice to trigger coverage.  [*See* R. 49 at 19-20.]  In opposition, Ms. Jeffrey argues that "MedPro's intention to have a requirement that only an insured or an agent of the insured be allowed to place [it] on notice does not negate the plain and unambiguous meaning of the insurance policy."  [R. 46-1 at 8.]

Ms. Jeffery is correct.  It is obvious that in drafting its contract with Dr. Clemens, MedPro assumed that he would be the only party to ever place it on notice of a "potential claim."  This belief is logical because an insured medical professional is clearly the party most likely to contact his own insurance provider to inform it of an impending lawsuit.  But though MedPro assumed Dr. Clemens would be the party to place it on notice of a potential claim, its contract with him does not limit the ability of a third-party to provide notice on his behalf.  For example,

---

[1] The Court notes that MedPro refers to the portion of Dr. Clemens's contract in which Condition 1 is found as "Paragraph J" in its Motion for Summary Judgment.  [R. 49 at 20.]  In her response, Ms. Jeffery argues that the intention of Paragraph J is not to limit third parties from being able to put MedPro on notice of a potential claim against an Insured.  [R. 53 at 2-4.]  Now, MedPro has filed a separate Motion to Correct Scrivener's Error in which it asks the Court to read its argument surrounding Paragraph J as actually surrounding Condition 1.  [R. 56.]  Though Ms. Jeffrey vehemently opposes MedPro's request, the Court will permit the amendment because it ultimately has no impact on its conclusion that a third party could put MedPro on notice of a potential claim under Dr. Clemens's contract.

Endorsement 828 of Dr. Clemens's contract indicates that it is the Insured's knowledge of a potential claim that triggers his duty to report. [R. 1-1 at 18.] But, directly thereafter, the contract provides more general language that MedPro "shall have no duty to defend or pay damages" unless a potential claim "was reported to the Company […]." [R. 1-1 at 18.] Similarly, while Condition 1 mandates that the Insured report a potential claim to guarantee coverage, it also includes no language limiting who may satisfy the Insured's duty to report. [*See* R. 47-3 at 6.] So, though Dr. Clemens had a duty to report if he wanted to guarantee coverage, his contract does not provide that a third-party could not report on his behalf. *See id.* Accordingly, despite its contention otherwise, MedPro is not entitled summary judgment on this ground.

### C

But MedPro is entitled to summary judgment because attorney Welsh's April 15, 2014 phone calls and letter did not sufficiently constitute a "report of a potential claim." [R. 49 at 21-27.] As previously described, Dr. Clemens's insurance contract provided that MedPro's duty to defend and pay damages on his behalf was not triggered unless a report of a potential claim "include[d] all reasonably obtainable information, including the time, place and circumstances of the incident; the nature and extent of the patient's injuries; and the names and addresses of the patient and any available witnesses." [R. 1-1 at 18.]

In her Motion, Ms. Jeffery contends that her attorney provided MedPro "all reasonably obtainable information" when he called the company and followed up by letter on April 15. [R. 46-1 at 6.] Though attorney Welsh's phone call and letter were admittedly brief, Ms. Jeffrey contends that this was because she "had not received follow-up treatment for Dr Clemens's negligence and [her] damages were not fully known" at the time. *Id.* ([Welsh]"did not have

8

access to any medical records, had not consulted an expert, and could not give any specifics

regarding the damages since damages were not known at that time.").  And by deposition,

attorney Welsh verified that he did not provide many details during his phone call with MedPro.

[*See* R. 56-5 at 16 ("I would have identified who I am, and I would have told them why I was

calling. I would ask them […] who's the claims person or adjuster […] assigned to the claim.")].

But Ms. Jeffery also points out that, after attorney Welsh's phone call with MedPro, the company

internally categorized her issue with Dr. Clemens as a "new claim," which she alleges

demonstrates that it had been placed on sufficient notice of her forthcoming suit.  [*See* R. 46-1 at

7.]

        By response, however, MedPro contends that both Ms. Jeffery and attorney Welsh were

aware of a plethora of facts related to her claim that they failed to share with the company on

April 15.  In support, MedPro first points out that, prior to April 15, Ms. Jeffery was aware that

she had been treated by Dr. Clemens, "suffered tremendous ongoing pain," knew that Dr.

Clemens had "abandoned his practice and left Kentucky," had consulted with other dentists, and

knew that she "would need treatment in the future," but failed to share the specifics of this

information with the company.  [R. 49 at 22-23.]  Further, MedPro notes that on February 26,

Ms. Jeffery "filed a detailed complaint with the Kentucky Board of Dentistry," which

"provid[ed] the background of her allegations against Clemens and the damages she had suffered

and continued to suffer," and, importantly, listed witnesses including attorney Welsh "as persons

with information" about her dispute.  *Id.* at 23 (referring to R. 56-19 at 2-5)].  And MedPro

further notes that by deposition, attorney Welsh admitted that, prior to April 15, he was aware of

the alleged harm Dr. Clemens had caused Ms. Jeffery, was aware of several efforts she had taken

9

to rectify her harm, as well as other details about the case—but nonetheless failed to share those details with MedPro.  [*See* R. 56-5 at 44-45.]

Upon review, the Court agrees with MedPro.  As an initial matter, it is evident that MedPro's "all reasonably obtainable information" requirement is a contractual condition precedent which must be satisfied before the company's duty to defend and pay for coverage is triggered.  *See Escott & Son v. White*, 73 Ky. 169, 172 (Ky. 1873) ("It is a well-recognized principle, and too well understood to be discussed, that where a party by the terms of the contract must perform a condition precedent before he is entitled to his money [...] he can maintain no action on the contract without [...] establishing by proof [...] full performance on his part."). Though MedPro's contract with Dr. Clemens does not exclude the ability of a third-party from acting as the Insured and notifying it of a potential claim as to require coverage, the contract explicitly mandates that whoever reports a potential claim to the company must inform it of "all reasonably obtainable information" before its duty is triggered.  [R. 1-1 at 18.]

Here, attorney Welsh, acting as Ms. Jeffery's agent, failed to inform MedPro of "all reasonably obtainable information" that he and his client knew about Ms. Jeffery's forthcoming claim when he called MedPro and drafted it a letter on April 15.  Though at least one other Circuit has clarified that a party need only provide an insurance company "all reasonably obtainable information" known at the time of the report to have satisfied its contractual duty, attorney Welsh admits in this matter that he was aware of many details on April 15 that he did not share with MedPro.  [*See First Professionals Ins. Co. v. Sutton*, 607 Fed. App'x 276, 287 (4th Cir. 2015); R. 56-5 at 44-45].[2]  Accordingly, MedPro's requirement to provide coverage to Dr. Clemens as triggered by the report of a potential claim against him was not livened

---

[2] The Court notes that a review of the Record indicates that MedPro's actions and categorization of attorney Welsh's report may have caused him to believe that he did not need to quickly

in this matter until after Dr. Clemens's insurance policy had been terminated.  MedPro is

therefore entitled to summary judgment and Ms. Jeffery is not owed declaratory judgment.

## III

Though Dr. Clemens's contract with MedPro did not exclude a third-party from notifying

the company of a "potential claim" against him, it did require that the reporting party inform the

company of "all reasonably obtainable information" it knew about the claim upon its report.

Because Ms. Jeffery failed to satisfy this requirement, the Court **ORDERS** as follows:

1. Ms. Jeffery's Motion for Summary Judgment [R. 46] is **DENIED**;

2. MedPro's Motion for Summary Judgment [R. 47] is **GRANTED**;

3. MedPro's Motion to Correct Scrivener's Error [R. 56] is **GRANTED**;

4. Parties shall file a status report within **thirty days** of the date of the entrance of this order
   in which they discuss whether they intend to proceed on the previously bifurcated claims
   in this matter [R. 19];

5. MedPro is **ORDERED** to file the entirety of attorney Welsh's deposition into the Record
   within **thirty days**, as it referenced various portions of his deposition in its briefing
   without filing those portions in the Record.

This the 23d day of June, 2022.

---

provide additional information to the company.  [R. 49 at 27-30.]  Ms. Jeffery appeared to argue
this by way of her initial Complaint.  [R. 1-2 at 6.]  But in its first Order granting MedPro's
Motion for Judgment on the Pleadings [R. 14], the Court informed Ms. Jeffery that her equitable
estoppel argument was not a "claim" but a theory by which she could perhaps use to prevent
MedPro from enforcing the notice provision of its contract with Dr. Clemens.  [R. 14 at 8-9.]
Nonetheless, Ms. Jeffery failed to reassert her equitable estoppel theory at summary judgment.
*See*, *e.g.*, *Sutton*, 607 Fed. App'x at 286-87 (finding that "had [a] call been properly processed,
[the insurance company] would have followed up with [the Insured] to provide additional
information.").

Gregory F. Van Tatenhove
United States District Judge